**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 7 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RANDALL MARTY

    Defendant-Appellant.

No. 96-1533
(D. Colo.)
(D. Ct. No. 96-CR-85-S)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **LUCERO**, and **MURPHY**, Circuit Judges.

This case stems from defendant Randall Lee Marty's possession of stolen firearms. After a three-day trial, the jury returned a guilty verdict, finding violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm), 18 U.S.C. § 922(j) (possession of stolen firearms), and 18 U.S.C. § 371 (conspiracy to violate the felon-in-possession and stolen firearm statutes). The district court sentenced Marty to 17½ years in prison. Marty here challenges the convictions and the basis of his sentence. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.    Background

Marty was arrested after assisting an acquaintance, James Swiftbird, in transporting at least 12 stolen rifles from Swiftbird's motel room to a pawnshop where Swiftbird sold the guns. Marty had met Swiftbird while Marty was incarcerated at the Canyon City State Prison in Colorado for a 1992 conviction for sexual assault on a child. According to Swiftbird's testimony at trial, Marty agreed to take Swiftbird and the guns to a pawn shop in exchange for a share of the sale proceeds. On three different trips during a two-day period, Marty and Swiftbird drove in Marty's car to the pawnshop with the guns. Swiftbird had stolen the guns, but he had initially told Marty that the guns belonged to a friend and that he was selling them on the friend's behalf. Swiftbird did not inform Marty that the guns had been stolen until after the men had made their second of three trips to the pawnshop. Police issued a warrant for Marty's arrest after the pawnshop learned that the guns had been stolen and informed the police of the license number of Marty's car, recorded by the pawnshop owner.

Prior to trial, Marty stipulated that he was a convicted felon and could not lawfully possess firearms. At trial, the government called his Colorado probation officer. Marty objected to the government's introduction of a State of Colorado document that the probation officer had given Marty informing Marty that he could not lawfully possess firearms. The district court excluded the document,

but ruled that the probation officer could testify that he had explained the contents of the document to Marty, so long as the officer did not testify as to the nature of Marty's prior convictions. After a three-day trial, the jury returned a guilty verdict in all three counts.

The district court sentenced Marty to 210 months incarceration for Count I (felon in possession of a firearm) under 18 U.S.C. § 924(e)(1), the Armed Career Criminal Act. The Act imposes a minimum 15-year sentence if the defendant has committed at least three prior violent crimes and is convicted of being a felon in possession of a firearm under § 922(g)(1). Marty's three prior crimes supporting a sentence enhancement under § 924(e)(1) were a 1983 conviction for burglary in Texas, a 1983 conviction for burglary in Florida, and the 1992 Colorado conviction for sexual assault upon a child, for which he was on probation at the time of the events in this case. The court sentenced Marty to lesser concurrent periods of incarceration on the other two counts.

II.    Discussion

Marty raises three issues on appeal. First, he argues that the district court abused its discretion by permitting the probation officer's testimony. Second, he argues that the evidence presented by the government was not sufficient to support a conviction on any of the three counts. Third, he argues that the district court erred in sentencing him on Count I according to the Armed Career Criminal

Act, asserting that his 1992 conviction for sexual assault on a child was not a violent crime under the Act and that Colorado law precluded the district court from using the two 1983 burglary convictions to enhance his sentence.

## A.     Probation Officer's Testimony

Marty first argues that the district court should not have allowed the probation officer's testimony because the testimony was not relevant to any issue in the case and it was more prejudicial than probative.  We review the district court's decision for abuse of discretion.  See United States v. Wacker, 72 F.3d 1453, 1471 (10th Cir.), cert. denied, 117 S. Ct. 136 (1996).  The government's stated purpose for presenting the probation officer's testimony was to demonstrate "'strong and probative evidence of intent' on the defendant's part in that the defendant had been apprised of his duty not to possess firearms, [but] disregarded [this duty]."  Appellee's Br. at 14 (quoting Tr. at 225) (emphasis in original).  Marty asserts that this alleged purpose for introducing the testimony was bogus because "[k]nowledge that one was aware he was violating a criminal statute by firearm possession is not an element of the government's case."  Appellant's Br. at 11.  He contends that the actual purpose of the evidence was to "urg[e] the jury to make the impermissible inference that due to [Marty's] recent conviction and incarceration he was a person more likely to commit the crimes charged."  Id. at 10.  He further asserts that because he had stipulated before trial that he had a

prior felony conviction, the testimony was unnecessary for the government to prove the felon-in-possession charge.

The district court should have excluded the testimony because the defendant's knowledge of the criminal law was not relevant to any issue in the case. However, "[a] trial court's admission of inadmissible evidence will disturb a defendant's conviction only if the error is not harmless." United States v. Cass, 127 F.3d 1218, 1225 (10th Cir. 1997). The question, then, is whether the admission of the probation officer's statements that the defendant knew he could not lawfully possess firearms, that he had recently been incarcerated, and that he was on probation at the time of his arrest in this case had a "substantial influence" on the jury's verdict. Id. We conclude that they did not.

The government's case against Marty was a strong one. There was no question that he transported firearms in his car on three occasions. On at least one of these occasions, he knew that the firearms had been stolen. The only questions the jury had to grapple with were whether the defendant had possession of the guns and whether he knew they were stolen. We have no doubt that the jury's verdict would have been the same even without the probation officer's testimony that the defendant knew that he could not lawfully possess firearms. Cf. United States v. Tome, 61 F.3d 1446, 1455 (10th Cir. 1995) (grave doubt as to whether error is harmless requires reversal) (quoting Kotteakos v. United States,

328 U.S. 750, 765 (1946)).  Moreover, evidence that Marty recently had been incarcerated had already properly come in through Swiftbird's testimony. Swiftbird testified that he recently had been incarcerated and had met Marty while in prison.  The defendant points us to no cases, nor could we find any, in which there was reversible error in a § 922(g)(1) case because a trial court admitted evidence that the defendant recently had been released from prison and placed on probation.  That a convicted felon served time in prison, even if recently, and that he was on probation at the time of a § 922(g)(1) violation, flow directly from the fact that the defendant has a felony conviction.

B.    Sufficiency of the Evidence

Marty next asserts that the government presented insufficient evidence to support convictions on each of the three counts.  We review the evidence in the light most favorable to the government to determine if a reasonable jury could find the defendant guilty beyond a reasonable doubt.  See United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994).

The three necessary elements to sustain a conviction under the felon-in-possession statute, 18 U.S.C. § 922(g)(1), are a prior felony conviction, knowledge that the instrument possessed is a firearm, and possession of the firearm in or affecting interstate commerce.  See United States v. Capps, 77 F.3d 350, 352 (10th Cir. 1997), cert. denied, 116 S. Ct. 2568 (1996).  The only issue

the defendant raises regarding his conviction under § 922(g)(1) is whether he had possession of the stolen weapons. He argues that he had neither actual nor constructive possession of the firearms. Constructive possession is sufficient to sustain a conviction under § 922(g)(1). See Mills, 29 F.3d at 549. One has constructive possession when he knowingly has ownership, dominion, or control over the object and the premises where it is found. See id. Marty owned the car in which he and Swiftbird transported the firearms. Marty had possession of the keys to the car, voluntarily allowed Swiftbird to load the guns into the car, drove Swiftbird and the guns to the pawnshop, and knew that he was carrying the guns in his car. He, therefore, knowingly had control over the objects (i.e., the firearms) and the premises (i.e., the car) where they were located. Cf. United States v. Eldridge, 984 F.2d 943, 946 (8th Cir. 1993) ("[Defendant] had dominion and control over the firearms because he had control of the keys to the trunk of the car."). Thus, sufficient evidence existed to convict the defendant of being a felon in possession of firearms.

Turning to Count II, a defendant may be convicted for possession of stolen firearms under 18 U.S.C. § 922(j) if he either had actual knowledge that the firearms he possessed were stolen or had reasonable cause to believe that the firearms were stolen. According to the trial testimony of Swiftbird and ATF agent Scot Thomasson, prior to Swiftbird and Marty's third and final trip to the

pawnshop, Swiftbird told Marty that Swiftbird had stolen the firearms. The jurors also heard testimony that, equipped with the knowledge that the firearms had been stolen, Marty still drove Swiftbird and the firearms to the pawnshop where Swiftbird sold them. This testimony is evidence that Marty had actual knowledge that the guns were stolen prior to him transporting them in his car to the pawnshop. The jury believed that testimony, and their conclusion was not unreasonable.

Marty contends in his brief, contrary to this evidence, that he did not assist Swiftbird in transporting the guns after learning that Swiftbird had stolen them. Thus, Marty argues not that the evidence was legally insufficient to convict him under § 922(j), but rather that the facts are different than determined by the jury. "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed. R. Civ. P. 52(a); see also Salve Regina College v. Russell, 499 U.S. 225, 233 (1991). There is nothing in the record to suggest that the jury's findings were clearly erroneous, and thus, we uphold the conviction for possession of stolen firearms.

Finally, Marty was charged under 18 U.S.C. § 371 with conspiring with Swiftbird to violate the felon-in-possession and stolen firearms statutes. To sustain a conviction for conspiracy, the government must prove that there was an

agreement to violate the law, the defendant knew the essential objectives of the conspiracy, the defendant knowingly and voluntarily took part in the conspiracy, and the co-conspirators were interdependent.  See United States v. Richardson, 86 F.3d 1537, 1546 (10th Cir.), cert. denied, 117 S. Ct. 588 (1996).  The government presented evidence at trial that was sufficient for a jury to find that each of these four elements had been satisfied.  The evidence was as follows.  First, Marty agreed with Swiftbird to use his car to transport Swiftbird and the stolen guns, in violation of federal law, to a pawnshop where Swiftbird sold them.  Second, Marty knew that the essential objective of the conspiracy was to split the proceeds of the sale of stolen firearms.  Third, Marty knowingly and voluntarily assisted Swiftbird in transporting the guns to the pawnshop.  Fourth, Swiftbird and Marty acted together.  Marty drove his car with the guns, and Swiftbird took the guns into the pawnshop to sell them.  Marty received a portion of the sale proceeds.  Thus, there was sufficient evidence to support Marty's conspiracy conviction under 18 U.S.C. § 371.

       C.     Sentencing under the Armed Career Criminal Act

Marty's final challenge on appeal concerns his sentence under 18 U.S.C. § 924(e)(1) for violating the felon-in-possession statute, 18 U.S.C. § 922(g)(1).  Section 924(e)(1) provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony . . . , such

person shall be fined not more than $25,000 and imprisoned not less than fifteen years . . . .

The three violent felonies that qualified as predicate offenses for sentence-enhancement under § 924(e)(1) were a 1983 Florida burglary conviction, a 1983 Texas burglary conviction, and a 1992 conviction for sexual assault on a child.

Marty first contends that his 1992 sexual assault conviction should not be considered a violent felony. We disagree. Section 924(e)(2)(B)(i) defines "violent felony" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." The Colorado statute under which Marty was convicted in 1992 included actual physical force or threatened physical force as an element of the crime of sexual assault on a child. See Pre-Sentence Report, at 9; Colo. Rev. Stat. §§ 18-3-402(1)(a)-(c), 18-3-405(2)(a) (1991). Accordingly, the 1992 sexual assault conviction is a violent felony for purposes of sentence enhancement under 18 U.S.C. § 924(e)(1).

Marty also asserts that although his burglary convictions would qualify as predicate offenses for § 924(e)(1) sentence enhancement purposes, they do not here because Colorado law had restored his civil rights for those crimes at the time he committed the offenses in this case. The prior convictions that will support a § 924(e)(1) enhancement are described and restricted by 18 U.S.C. § 921(a)(20). See United States v. Norman, Nos. 96-1342, 96-1359, 1997 WL 735338, at *3 (10th Cir. Nov. 28, 1997) (looking to § 921(a)(20) to determine

- 10 -

who is a felon for purposes of § 922(g)(1)).  Section 921(a)(20) reads, in relevant part:

> What constitutes a [felony] conviction . . . shall be determined in accordance with the law of the jurisdiction in which the proceedings were held.  Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter . . . .

In United States v. Sanders, this circuit held that the question whether the § 921(a)(20) exemptions apply, including restoration of one's civil rights, is "determined according to the law of the jurisdiction where the conviction was obtained." United States v. Sanders, 18 F.3d 1488, 1490 (10th Cir. 1994).  Marty acknowledges that neither Texas nor Florida, the states in which he was convicted for the burglaries, had restored his civil rights.  Because neither Florida nor Texas had restored his civil rights, the district court correctly considered those two crimes as predicate offenses for sentence enhancement under 18 U.S.C. § 924(e)(1).

III.    Conclusion

Having concluded that the district court did not abuse its discretion in allowing the testimony of the defendant's probation officer, that the evidence that the government presented was sufficient to sustain all three convictions, and that the district court properly enhanced his sentence under 18 U.S.C. § 924(e)(1), we AFFIRM the defendant's conviction and sentence.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge